IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| In the Matter Of<br><br>ALEX U., by and through his Parent, KRISTINE U.,<br><br>             Plaintiffs,<br><br>vs.<br><br>DEPARTMENT OF EDUCATION STATE OF HAWAII,<br><br>             Defendants. | CIVIL NO. 12-00458 DKW-RLP<br><br>**ORDER AFFIRMING THE ADMINISTRATIVE HEARINGS OFFICER'S NOVEMBER 22, 2011 DECISION** |

**ORDER AFFIRMING THE ADMINISTRATIVE HEARINGS OFFICER'S
NOVEMBER 22, 2011 DECISION**

**INTRODUCTION**

Before the Court is Plaintiffs Alex U. ("Student"), by and through his

Parent, Kristine U.'s ("Mother") (collectively, "Plaintiffs") appeal, pursuant to the

Individuals with Disabilities Education Act of 2004 ("IDEA"), 20 U.S.C. § 1400 *et*

*seq*., from the Administrative Hearings Officer's ("Hearings Officer") November

22, 2011 decision entitled, "Remanded Decision Subsequent to U.S. District

Court's Findings and Recommendation that the Administrative Hearings Officer's

Decision be Reversed and the Case be Remanded to the Administrative Hearings

Officer" ("Decision"). On August 30, 2013, the Court heard oral arguments on the appeal. After careful consideration of the supporting and opposing memoranda, the administrative record, and the arguments of counsel, the November 22, 2011 Decision is AFFIRMED.

## BACKGROUND

The following facts have been established by the Hearings Officer's previous decisions, as well as the decisions by other judges in this Court in prior appeals, and these facts are not specifically disputed in this appeal.

Student has autism and attended a public elementary school at the time of the Request for a Due Process Hearing in 2009. Student is not able to communicate well and can become frustrated. This leads to behaviors "such as tantrumming, wailing, throwing himself on the ground, and being resistant." Decision at 4 ¶ 3. Mother testified that consistency is important for Student, and that Student's maladaptive behaviors will increase if he is not in a consistent environment. A clinical psychologist similarly observed that Student responds better to a predictable schedule. *Id.* at 4–5 ¶¶ 5, 12.

Student's May 29, 2009 IEP ("IEP") provided him with the following services: 1830 minutes of special education per week, 540 speech-language therapy minutes per week, 1170 counseling minutes per quarter, and daily transportation. The services were to be provided in both general and special

education settings. *Id.* at 5–6 ¶ 15. The IEP states that Student "will be included with General Education peers for school-wide and grade-level activities such as: recess, lunch, [and] developmentally appropriate field trips with 1:1 Adult Support." *Id.* at 6 ¶ 19. The Hearings Officer found that Student's IEP "provide[d] Student with daily opportunities to mainstream in order to develop his communication and socialization skills." *Id.* at 6–7 ¶ 21. At the time Student's parents agreed to the IEP, the Department of Education, State of Hawai'i ("DOE") had not yet implemented furloughs. *Id.* at 6 ¶ 20.

On October 23, 2009, the State implemented furloughs due to budgetary concerns. There were seventeen furlough days during the 2009–2010 school year. Shortly before furloughs were implemented, Student's behavior worsened. After furloughs, Student continued to behave poorly. *Id*. at 7 ¶¶ 22–26. Mother and the clinical psychologist observed an increase in Student's negative behaviors after furloughs. *Id.* at 7 ¶¶ 27, 29.

After furloughs were implemented, the DOE created "furlough adjustment plans" to attempt to provide the services outlined in the IEP. Student's furlough adjustment plan commenced in November 2009 and accounted for the furlough days that occurred prior to the commencement of the furlough adjustment plan. The DOE lengthened the school day from 4:30 to 5:30 p.m. and provided school on Sundays for a few hours. With the furlough adjustment plan, Student

did not lose any special education minutes in the IEP as a result of the furloughs. *Id.* at 7–8 ¶¶ 30, 32.

The Behavioral Instructional Support Specialist ("BISS") opined that furlough Fridays did not negatively impact Student. *Id.* at 9 ¶ 41. However, the clinical psychologist testified that the extended school day was too long for Student and that Student "burned out" during the last half hour. *Id.* at 8 ¶ 31. Consequently, the DOE modified the furlough adjustment plan and shortened the extended school day to 5:00 p.m., while making up those minutes by extending the furlough adjustment period. As for the Sunday instruction, Mother testified that this instruction did not include other children or the special education teacher, and that the Sunday school was disruptive of the family routine. Mother testified that the lack of consistency in Student's schedule and the decrease in opportunities for Student to mainstream led to a regression of skills and worsening behavior. *Id.* at 8–9 ¶¶ 32, 39.

The Hearings Officer summarized the behaviors of Student surrounding the implementation of furlough Fridays as follows:

> According to both Mother and the clinical psychologist, Student's tantrumming behaviors started to increase in August or September 2009, before the first furlough Friday. This may have been due to a change in skills trainers. The clinical psychologist opined that changes may contribute to Student's behavioral problems.
> In December 2009, after furlough Fridays had begun, Student bit a skills trainer's breast at school. Student had not

4

> bitten for about a year prior to this. In a separate incident, on October 29, 2009, Student spit in a skills trainer's face.
> At the end of October 2009 and in November 2009, parents asked the clinical psychologist to come to their home to assist in getting Student into the car. Student was tantrumming and refusing to go to school.
> Mother testified that after furlough Fridays started, Student's behaviors escalated. Student's behaviors changed from resistant to fighting. Student was confused about when he had to go to school and perseverated on this throughout the week.
> Data sheets confirmed that after furlough Fridays began, Student had increased tantrumming and crying behaviors.

*Id.* at 7 ¶¶ 24–28.

On October 20, 2009, Student, along with other plaintiffs, filed a complaint seeking to halt the furloughs. The students alleged that the DOE had violated the stay put provision of the IDEA, which requires that the child remain in his current educational placement during the pendency of the proceedings. Judge Ezra denied the motion for temporary injunctive relief. Judge A. Wallace Tashima later denied the students' motion for a preliminary injunction. The students appealed, and the Ninth Circuit affirmed the district court's denial of the students' motion for preliminary injunction. *N.D. v. DOE*, 600 F.3d 1104, 1117 (9th Cir. 2010).

On January 6, 2011, the Hearings Officer issued a decision after a due process hearing on November 16, 2010. The Hearings Officer concluded that: (1) the implementation of furlough Fridays was a unilateral change in the program

5

offered in Student's IEP; (2) through the implementation of furlough Fridays, the DOE materially failed to implement Student's IEP; and (3) the DOE violated HAR § 8-56-68(a)(1) by failing to provide prior written notice to the parents when changing Student's program. Decision at 2.

The DOE subsequently appealed the January 6, 2011 decision. On appeal, Judge Kurren issued a Findings and Recommendation ("F & R") that the decision be reversed and remanded because: 1) the DOE's implementation of furloughs did not constitute a unilateral change in Student's educational program; and 2) the Hearings Officer failed to properly apply *Van Duyn v. Baker Sch. Dist.*, 502 F.3d 811, 822 (9th Cir. 2007). F& R at 13. Judge Tashima adopted that recommendation and remanded to the Hearings Officer to reconsider the application of *Van Duyn*.

On remand, the Hearings Officer concluded that the DOE failed to implement specific provisions of Student's IEP:

> The May 29, 2009 IEP was created with the understanding that the special education and related services would be provided during a 5 day school week. . . . Except for speech-language services (which were not provided on Fridays), the implementation of furlough Fridays caused Student to receive less special education, related services, ESY services, and supplemental aids and services. Additionally, during furlough Friday weeks, Student's opportunities to generalize with non-disabled peers were also reduced.

6

Decision at 11–12.  However, the Hearings Officer, applying *Van Duyn*, determined that these implementation failures were not material:

> Based upon the testimony from DOE school personnel regarding Student's continued educational progress after furlough Fridays had commenced, it has not been shown that there was more than a minor discrepancy between the services provided to Student after furlough Fridays and the services offered in Student's May 29, 2009 IEP.

*Id.* at 13.  Further, the Hearings Officer determined that,

> . . . under the DOE's furlough adjustment plan, Student received all of his instructional time in the May 29, 2009 IEP, except that minutes with general education peers and opportunities to mainstream were decreased.  However, this did not amount to a material failure to implement Student's May 29, 2009 IEP.

*Id.* at 15.  Plaintiffs' appeal of that Decision is presently before the Court.

## **STANDARD OF REVIEW**

### **I.    IDEA Overview**

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs."  *Hoeft ex rel. Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992) (citing *Honig v. Doe*, 484 U.S. 305, 310 (1988)).  It ensures that "all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and

prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A).  The IDEA defines FAPE as special education and related services that—

> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).  To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education, and formulate and implement an IEP.  20 U.S.C. § 1414.  The IEP is to be developed by an "IEP Team" composed of, *inter alia*, school officials, parents, teachers and other persons knowledgeable about the child.  20 U.S.C. § 1414(d)(1)(B).

"Procedural flaws in the IEP process do not always amount to the denial of a FAPE."  *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009) (citations omitted).  Once a procedural violation of the IDEA is identified, the court "must determine whether that violation affected the substantive rights of the parent or child." *Id.* (citations omitted).  "[P]rocedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result

in the denial of a FAPE." *Id.* (alteration in original) (citations and quotation marks omitted).

Compliance with the IDEA does not require school districts to provide the "absolutely best" or "potential-maximizing" education. *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 439 (9th Cir. 2010) (citation and internal quotation marks omitted). Rather, school districts are required to provide only a "'basic floor of opportunity.'" *Id.* (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 201 (1982)). The FAPE need only be "appropriately designed and implemented so as to convey [the][s]tudent with a meaningful benefit." *Id.* at 433 (citations and quotation marks omitted).

## II.  **Standard of Review**

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(i)(2)(C), which provides:

> In any action brought under this paragraph, the court—
> (i) shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that the district court give "'due weight'" to the administrative proceedings. *Capistrano*, 556 F.3d at 908 (quoting *Rowley*, 458 U.S. at 206) (some citations omitted). The district court, however, has the

discretion to determine the amount of deference it will accord the administrative ruling. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (citing *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)). In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'" *Capistrano*, 556 F.3d at 908 (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)).

The district court should give "substantial weight" to the hearings officer's decision when the decision "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented." *Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466–67 (9th Cir. 1996) (citation and quotation marks omitted). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." *Wartenberg*, 59 F.3d at 891. "[T]he ultimate determination of whether an IEP was appropriate," however, "is reviewed de novo." *A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.*, 627 F.3d 773, 778 (9th Cir. 2010) (citing *Wartenberg*, 59 F.3d at 891).

A court's inquiry in reviewing IDEA administrative decisions is twofold:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? [*Rowley*, 458 U.S. at 206–07] (footnotes omitted). If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more. *Id.* at 207.

*J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 947 (9th Cir. 2010) (some citations omitted).

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted). The challenging party must show, by a preponderance of the evidence, that the hearing decision should be reversed. *J.W.*, 626 F.3d at 438 (citation omitted).

## **DISCUSSION**

Plaintiffs assert that the Hearings Officer was incorrect in concluding that there was no material failure to implement the IEP. The DOE counters that the Hearings Officer's ruling was proper because the DOE developed (and appropriately modified) a furlough adjustment plan for Student to ensure that education and service minutes were not missed and because Student continued to make educational progress. The Court agrees with the DOE and hereby affirms the Decision by the Hearings Officer.

I. **<u>Materiality Under *Van Duyn*</u>**

The issue on remand was limited to the application of the materiality standard set forth by the Ninth Circuit in *Van Duyn*. That case involved a difficult transition from elementary to middle school for a severely autistic student. In *Van Duyn*, the plaintiffs argued that the school district failed to implement key portions of the student's IEP, including required math instruction, a behavior management plan, and placement in a self-contained special education classroom. The Ninth Circuit affirmed the district court's ruling that the school district was liable for a "material implementation failure" when it undershot, by five hours, the IEP requirement of eight to ten hours of math instruction per week, but did not materially fail to implement other portions of the IEP. 502 F.3d at 823–25.

The Ninth Circuit set forth the following explanation of a "material failure to implement an IEP" that violates the IDEA:

> A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP. Because the parties debate whether Van Duyn's skills and behavior improved or deteriorated during the 2001–02 school year, we clarify that the materiality standard does not require that the child suffer demonstrable educational harm in order to prevail. However, the child's educational progress, or lack of it, may be probative of whether there has been more than a minor shortfall in the services provided. For instance, if the child is not provided the reading instruction called for and there is a shortfall in the child's reading achievement, that would certainly tend to show that the failure to implement the IEP was material. On the other hand, if the child performed at or above

12

>the anticipated level, that would tend to show that the shortfall in instruction was not material. We also emphasize that nothing in this opinion weakens schools' obligation to provide services "in conformity with" children's IEPs. § 1401(9). IEPs are clearly binding under the IDEA, and the proper course for a school that wishes to make material changes to an IEP is to reconvene the IEP team pursuant to the statute—not to decide on its own no longer to implement part or all of the IEP. *See* §§ 1414(d)(3)(F), 1415(b)(3).

*Id.* at 822.

Applying this standard, the Ninth Circuit concluded that the school district did not violate the IDEA. First, although the IEP required eight to ten hours per week of math instruction, the student did not initially receive all of those hours and the ALJ ordered that he receive the five hours per week that he had not been receiving. The Ninth Circuit agreed that the five-hour shortfall was a material implementation failure, but ruled that "after the District's corrective actions, there was no material failure to provide Van Duyn with the required amount of weekly math instruction." *Id*. at 823.

Next, the court concluded that, although several elements of Van Duyn's behavior management plan were not implemented in the same way at the middle school as at the elementary school, these failures were not "material" because the IEP did not require that the behavior management plan be implemented identically at the two schools. The court noted that there was evidence that the elementary school behavior management plan was inappropriate

13

for a middle school context, and moreover, Van Duyn's behavior appeared to improve following the change. *Id.* at 823–24.

Last, the Ninth Circuit considered Van Duyn's argument that his IEP required that he be placed in a self-contained special education classroom, a single classroom in which disabled students receive instruction individually or in small groups with much flexibility in timing and content. The Ninth Circuit held that the school district did not materially fail to provide him with a self-contained classroom in middle school where his class size varied, there was always one teacher and one aide present, and there was substantial flexibility in instruction. The court noted that his middle school schedule "may not have been quite as beneficial a learning environment as the elementary school, but we cannot conclude that it constituted a material failure to provide Van Duyn with a self-contained classroom." *Id.* at 825. In sum, the Ninth Circuit concluded that:

> A material failure to implement an IEP occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP. Applying that standard here, the services the District provided were not materially different from what was required by the IEP (again with the exception of the math instruction provided prior to the ALJ's order).

*Id.* at 826.

## II. Furloughs Did Not Constitute a Material Failure to Implement Student's Program

First, the Court notes that there is no challenge to the Hearings Officer's determination that the DOE failed to implement specific provisions of Student's IEP post-furlough given that the IEP contemplated a 5-day school week. Therefore, the Court accepts the Hearings Officer's conclusion that the DOE failed to implement portions of the IEP for the reasons stated in the Decision. Decision at 11–12. The Court then turns to whether the implementation of furlough Fridays was a material failure under *Van Duyn* and concludes it was not.

Plaintiffs point to evidence of regressive behaviors to show that there was a material failure to implement Student's IEP. The DOE does not dispute that Student demonstrated some negative behaviors around the time of the October 2009 furloughs, but contends that those behaviors may have been caused by other factors and that, overall, any regression was short-lived because of the implementation of Student's furlough adjustment plan in November 2009 and because Student made positive progress. The Court agrees with the Hearings Officer that Student's overall educational progress is probative of the "materiality" determination that there has not been more than a minor shortfall in services for Student. *Van Duyn*, 502 F.3d at 822.

In discussing Student's furlough-induced regression, Plaintiffs cite specifically to an increase in tantrumming and aggression (including an instance of

spitting at a skills trainer), biting (including an incident in December 2009 where student bit a skills trainer's breast), and two instances in October and November 2009 when Mother asked the clinical psychologist to come to Plaintiffs' home because Student refused to go to school. Opening Br. at 19, 21–22. None of these behaviors are trivial and the DOE's own witnesses acknowledged, and the Hearings Officer found, that some regressive behaviors occurred between October and December 2009.

But the Court finds significant the clinical psychologist's testimony that Student's behaviors in late 2009 were likely due to several contributing factors, including changes in service providers, changes in medication, puberty, as well as furlough Fridays. Hearing Tr. Vol. 2 at 294:24–295:19; Decision at 9 ¶ 43; *see* Hearing Tr. Vol. 1 at 71:17–72:7 (Mother's testimony that Student behaves better when he has a consistent skills trainer and that there was a change in the skills trainer in October 2009). In fact, the clinical psychologist testified that Student's aggressive and tantrumming behaviors began in August and September of 2009, *before* the institution of furlough Fridays. Decision at 13; Hearing Tr. Vol. 1 at 29:10–23. Significantly, Student's Mother agreed. Hearing Tr. Vol. 1 at 71:7–14. Indeed, Student's aggressive behaviors (e.g., hitting, pushing, pinching) escalated significantly in September and early October 2009, again *prior* to the onset of furloughs on October 23. Hearing Tr. Vol. 2 at 292:23–293:7.

In short, the weight of the evidence indicates that the regressive behaviors exhibited by Student in late 2009 were not directly caused by a change of services provided to Student as a result of furlough Fridays. Consequently, the DOE did not materially fail to implement Student's IEP.

Nor is there evidence of academic regression as a result of furlough Fridays. To the contrary, the DOE has offered substantial evidence that Student made academic *progress* during the school year in question, Answering Br. at 34–37, and this evidence is unrebutted. Pursuant to *Van Duyn*, the evidence of educational progress indicates that there was no material shortfall in instruction and services for Student. 502 F.3d at 822.

The Court also concludes that the DOE's efforts to implement a furlough adjustment plan for Student sufficiently mitigated any negative impact of furloughs, and implemented the instruction time of the IEP as much as possible (even if under a different schedule). Importantly, the furlough adjustment plan was a conscious effort by the DOE to make up for instruction time required by the IEP that would be lost because of furlough Fridays. Hearing Tr. Vol. 2 at 151:4–8; *cf. Noah D. v. DOE*, 2013 WL 4482495, at *7 (D. Haw. Aug. 20, 2013) (determining that there was a material failure under *Van Duyn* where, among other circumstances, the DOE did not have any plan to make up for services lost as a result of furlough days). This included the furlough days that occurred prior to the

development of the furlough adjustment plan.  Resp. Ex. 12 (Furlough Adjustment Plan) at 187.  The Hearings Officer correctly concluded that, although not in the form contemplated by the IEP, Student received all of his instructional time, with the exception of the decrease in general education minutes and opportunities to mainstream.  Decision at 15, 16.

The Court does not agree with Plaintiffs to the extent that they contend that the DOE's refusal to provide any instruction on Fridays is itself a material failure to implement the IEP.  Such an argument is directly contrary to the Ninth Circuit's holding in *N.D.* that an across-the-board reduction of school days (e.g. furlough Fridays) does not conflict with the IDEA.  600 F.3d at 1116–17.  While the DOE may have materially failed to implement the IEP had it not developed any plan to make up the instruction lost as a result of furlough Fridays, *cf. Noah D.*, 2013 WL 4482495, at *7, not providing any services on Fridays was not itself a material failure.

# **CONCLUSION**

The November 22, 2011 Decision entitled "Remanded Decision Subsequent to U.S. District Court's Findings and Recommendation that the Administrative Hearings Officer's Decision be Reversed and the Case be Remanded to the Administrative Hearings Officer" is hereby AFFIRMED.

IT IS SO ORDERED.

DATED: HONOLULU, HAWAI'I, November 22, 2013.



Derrick K. Watson
United States District Judge

___

Alex U. v. DOE; CV 12-00458 DKW-RLP; ORDER AFFIRMING THE ADMINISTRATIVE HEARINGS OFFICER'S NOVEMBER 22, 2011 DECISION